UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------ X
GABRIEL MCCOURT,                          :
                                          :
        Plaintiff,                      : Case No.: _____
                                          :
   -against-                             : COMPLAINT
                                          :
TERRAFORM POWER, INC., BRIAN              : DEMAND FOR JURY TRIAL
LAWSON, CAROLYN J. BURKE,                 :
CHRISTIAN S. FONG, HARRY GOLDGUT,         :
RICHARD LEGAULT, MARK                     :
MCFARLAND, and SACHIN SHAH,               :
                                          :
        Defendants.                     :
------------------------------------------ X

      Plaintiff, Gabriel McCourt ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

    1.    This is an action brought by Plaintiff against TerraForm Power, Inc ("TerraForm" or the "Company") and Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with TerraForm, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), SEC Rule 14a-9, 17 C.F.R. § 240.14a-9, and for breaching their fiduciary duty of disclosure under Delaware State law.

    2.    On March 16, 2020 the Company entered into an agreement and plan of merger (the "Merger Agreement") between Brookfield Renewable Partners L.P. ("BEP"), Brookfield Renewable Corporation ("BEPC"), 2252876 Alberta ULC ("Acquisition Sub," and together with BEP and BEPC, the "BEP Entities"), and TerraForm Power NY Holdings, Inc ("TerraForm

1

New York"). As a result of the Merger Agreement, TerraForm will become an affiliate of BEP (the "Proposed Transaction") and TerraForm shareholders will receive either 0.381 Class A exchangeable subordinate voting shares of BEPC or 0.381 of a limited partnership unit of BEP per share (the "Merger Consideration").

3. On June 29, 2020, in order to convince TerraForm shareholders to vote in favor of the Proposed Transaction, Defendants authorized the filing of a materially incomplete and misleading Schedule 14A Definitive Proxy Statement (the "Proxy") with the Securities and Exchange Commission ("SEC").

4. The special meeting of TerraForm to vote on the Proposed Transaction is scheduled for July 29, 2020 at 11:00 a.m., Eastern Time (the "Shareholder Vote"). It is imperative that the material information that has been omitted from the Proxy is disclosed prior to the Shareholder Vote so Plaintiff can cast an informed vote and properly exercise his corporate suffrage rights.

5. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and breaches of their fiduciary duty of candor. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction until the material information discussed herein is disclosed to TerraForm's shareholders sufficiently in advance of the Shareholder Vote or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

7. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges

violations of Sections 14(a) and 20(a) of the Exchange Act. This Court also has jurisdiction over the duty of candor claim pursuant to 28 U.S.C. § 1367.

8. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over the Defendants by this Court permissible under traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman* 764 F.2d 1309, 1305 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* At 1316

9. Venue is proper in this District under Section 27 of the Exchange Act and 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District. Indeed, TerraForm's common units trade on Nasdaq GS, which is headquartered in this District rendering venue in this District appropriate. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

**PARTIES**

10. Plaintiff is, and at all relevant times has been, a shareholder of TerraForm.

11. Defendant TerraForm is a Delaware corporation and maintains its principal executive offices at 200 Liberty Street, 14th Floor, New York, New York 10281. TerraForm's common stock is traded on the Nasdaq GS under the ticker symbol "TERP."

12. Individual Defendant Brian Lawson is, and has been at all relevant times, the

Chairman of the Board.

13. Individual Defendant Carolyn J. Burke is, and has been at all relevant times, a director of the Company, as well as a member of the Special Committee of the Board.

14. Individual Defendant Christian S. Fong is, and has been at all relevant times, a director of the Company, as well as a member of the Special Committee of the Board.

15. Individual Defendant Harry Goldgut is, and has been at all relevant times, a director of the Company.

16. Individual Defendant Richard Legault is, and has been at all relevant times, a director of the Company.

17. Individual Defendant Mark McFarland is, and has been at all relevant times, a director of the Company, as well as the Chair of the Special Committee of the Board.

18. Individual Defendant Sachin Shah is, and has been at all relevant times, a director of the Company.

19. The Individual Defendants referred to in ¶¶ 12-18 are collectively referred to herein as the "Individual Defendants" and/or the "Board", and together with TerraForm they are referred to herein as the "Defendants."

**SUBSTANTIVE ALLEGATIONS**

**I.  Background and the Proposed Transaction**

20. TerraForm owns and operates a best-in-class renewable power portfolio of solar and wind assets located primarily in the U.S. and E.U., totaling more than 4,200 MW of installed capacity. TerraForm's goal is to acquire operating solar and wind assets in North America and Western Europe.

21. BEP operates one of the world's largest publicly traded, pure-play renewable

power platforms. Its portfolio consists of hydroelectric, wind, solar and storage facilities in North America, South America, Europe and Asia, and totals approximately 19,000 megawatts of installed capacity and an approximately 13,000 megawatt development pipeline. BEP is listed on the New York and Toronto stock exchanges.

22. On March 16, 2020, TerraForm and BEP issued a joint press release announcing the Proposed Transaction, which stated in relevant part:

### BROOKFIELD RENEWABLE AND TERRAFORM POWER ENTER INTO A DEFINITIVE MERGER AGREEMENT

BROOKFIELD, NEWS, March 16, 2020 (GLOBE NEWSWIRE) -- Brookfield Renewable Partners L.P. ("Brookfield Renewable" or "BEP") (TSX: BEP.UN; NYSE: BEP) and TerraForm Power, Inc. ("TerraForm Power" or "TERP") (Nasdaq: TERP) today announced that they have entered into a definitive merger agreement for Brookfield Renewable to acquire all of the outstanding shares of Class A common stock of TerraForm Power, other than the approximately 62% currently owned by Brookfield Renewable and its affiliates.

Each share of Class A common stock of TerraForm Power will be acquired for consideration equivalent to 0.381 of a Brookfield Renewable unit. For each share of TerraForm Power's Class A common stock held, TERP shareholders will be entitled to receive, at their election, either Class A shares of Brookfield Renewable Corporation ("BEPC shares") or limited partnership units of Brookfield Renewable ("BEP units").

The Special Committee of the Board of Directors at TerraForm Power (the "Special Committee"), comprised solely of non-executive, independent directors of TerraForm Power, has unanimously recommended that TERP shareholders approve the transaction. The Special Committee believes the transaction is fair to and in the best interests of TERP and its unaffiliated shareholders.

"This is a compelling transaction that creates significant value for investors in both companies through a simplified corporate structure and continued sponsorship from Brookfield Asset Management," said Sachin Shah, CEO of Brookfield Renewable. "We are pleased to have reached an agreement for a combined business with a longstanding track record of creating value for shareholders through all economic cycles, where investors will benefit from a globally diversified mandate, supported by significant access to capital and one of the strongest investment grade balance sheets in the sector."

>He continued, "The form of consideration through BEP units or the new BEPC shares will allow TERP shareholders to choose how to most efficiently participate in the transaction, either through a partnership or corporate structure."
>
>Mac McFarland, Chair of the Special Committee, said, "We are pleased to have reached this agreement with Brookfield Renewable and believe it is in the best interests of TERP and its shareholders. Since receiving Brookfield Renewable's initial proposal in January, the Special Committee has conducted extensive due diligence. With the assistance of our independent advisors, we have concluded that Brookfield Renewable's improved proposal, which includes an increase in the exchange ratio, provides an immediate realization of value and upside potential. With the transaction, TERP shareholders will benefit from access to a broader growth mandate that includes the acquisition of global, multi-technology renewable power assets and development opportunities, as well as increased access to capital and liquidity, underpinned by an investment grade balance sheet."
>
>The combined company will be one of the largest publicly-traded, globally-diversified, multi-technology, pure-play renewable power platforms, with total assets of approximately $50 billion and expected annual funds from operations of approximately $1 billion.

23.     The Merger Consideration represents inadequate compensation for TerraForm shares. Given the Company's strong recent financial performance and bright economic outlook, it is imperative that shareholders receive the material information (discussed in detail below) that Defendants have omitted from the Proxy, which is necessary for shareholders to properly exercise their corporate suffrage rights and cast an informed vote on the Proposed Transaction.

**II.     The Proxy Omits Material Information**

24.     On June 29, 2020, Defendants filed the materially incomplete and misleading Proxy with the SEC. The Individual Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy misrepresents and/or omits material information that is necessary for the Company's shareholders to make an informed decision in connection with the Proposed Transaction.

25.     *First*, the Proxy omits material information regarding the Company's and BEP's

financial projections.

26. With respect to the *Net Asset Value ("NAV") Model* for the Company, the Proxy fails to disclose: (i) all line items used to calculate Adjusted EBITDA, Cash Available for Distribution, and Cash Flow to Equity; and (ii) the updates and adjustments made to the *NAV Model* during the process leading up to the execution of the Merger Agreement.

27. With respect to the *Five-Year Business Plan Model* for the Company, the Proxy fails to disclose: (i) all line items used to calculate Adjusted EBITDA and Cash Available for Distribution; and (ii) the updates and adjustments made to the *Five-Year Business Plan Model* during the process leading up to the execution of the Merger Agreement.

28. With respect to the *BEP Management Forecasts*, the Proxy fails to disclose: all line items used to calculate: (i) Adjusted EBITDA and Funds from Operations; and (ii) the updates and adjustments made to the *BEP Management Forecasts* during the process leading up to the execution of the Merger Agreement.

29. With respect to the *Adjusted BEP Forecasts*, the Proxy fails to disclose all line items used to calculate Adjusted EBITDA and Funds from Operations.

30. The disclosure of projections is of the utmost importance to shareholders asked to dilute their holdings in a Company and forego future growth in the enterprise. Not providing shareholders a full valuation picture constitutes a material omission. Concerning future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths. *See Campbell v. Transgenomic, Inc.*, 916 F.3d 1121 (8th Cir. 2019) (noting that "half-truths" are actionable misrepresentations under securities laws and collecting cases).

31. ***Second***, the Proxy omits material information regarding the analyses performed

by the Company's financial advisors in connection with the Proposed Transaction, Morgan Stanley & Co. LLC ("Morgan Stanley") and Greentech Capital Advisors Securities, LLC ("Greentech").

32.     With respect to Morgan Stanley's *Levered Discounted Cash Flow Analysis (NAV Model Analysis)*, the Proxy fails to disclose: (i) all line items used to calculate projected cash flow to equity; and (ii) the individual calculated inputs and assumptions underlying the discount rates of 4.1% and 5.1%.

33.     With respect to Morgan Stanley's *Levered Discounted Cash Flow Analysis (Five-Year Business Plan Model Analysis)*, the Proxy fails to disclose: (i) the terminal values for TerraForm; and the inputs and assumptions underlying the selection of a discount rate range of 4.1% and 5.1%.

34.     With respect to Morgan Stanley's *Equity Research Analysts' Price Targets Analysis*, the Proxy fails to disclose: (i) the individual price targets observed; (ii) the reasons for selecting each price target and the sources thereof; and (iii) the individual calculated inputs and assumptions underlying selection of the discount rate of 4.6%.

35.     With respect to Greentech's *Discounted Cash Flow Analysis of TerraForm*, the Proxy fails to disclose: (i) all line items used to calculate cash flow to equity; (ii) the terminal values for TerraForm; and (iii) the individual calculated inputs and assumptions underlying the selection of the discount rate range of 5.95% to 6.45% and the perpetual growth rates of 0.75% to 1.25%.

36.     With respect to Greentech's *Discounted Cash Flow Analysis of BEP*, the Proxy fails to disclose: (i) all line items used to calculate cash flow to equity; (ii) the terminal values for BEP; and (iii) the individual calculated inputs and assumptions underlying the selection of discount rate range of 5.92% to 6.42% and the perpetual growth rates of 1.25% to 1.75%.

37.     With respect to Greentech's *Sum-of-the-Parts Analyses*, the Proxy fails to

disclose: (i) the cash flows from each project within the TerraForm forecasts; and (ii) the individual calculated inputs and assumptions underlying the discount rates used in the analyses.

38. With respect to Greentech's *Price Targets Analysis*, the Proxy fails to disclose: (i) the individual price targets observed by Greentech in the analysis; and (ii) the reasons for those selections and their sources.

39. Fairness opinions are fundamental to the M&A process and is ultimately what stockholders rely upon in their determination to vote for or against a transaction. Unfortunately, fairness opinions are also vulnerable to manipulation, which is why it is of the utmost important that stockholders have analyses available—such as those omitted here—to determine whether those metrics are reasonable, or whether they were unreasonably selected in order to obtain a finding of fairness. In valuing transactions such as these, it becomes all the more critical. As one highly respected professor explained in one of the most thorough law review articles regarding the fundamental flaws of fairness opinions, in a financial analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation." Steven M. Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1576 (2006). Such choices include "the appropriate discount rate, and the terminal value…" *Id.* As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars….This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques. This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness. This raises a further dilemma in light of the conflicted nature of the investment banks who often provide

these opinions.

*Id.* at 1577-78. Therefore, in order for stockholders to determine how to vote they need access to the above information, and the omission of these metrics makes each financial analysis identified inherently misleading.

40. In sum, the omission of the above-referenced information renders the Proxy materially incomplete and misleading, in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the Shareholder Vote, Plaintiff will be unable to cast an informed vote regarding the Proposed Transaction, and is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

### Against All Defendants for Violations of Section 14(a) of the Exchange Act

41. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

42. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

43. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any

material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

44. The omission of information from a proxy will violate Section 14(a) if other SEC regulations specifically require disclosure of the omitted information.

45. Defendants have issued the Proxy with the intention of soliciting the Company's common shareholders' support for the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information to shareholders.

46. In so doing, Defendants made misleading statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to the Company's shareholders although they could have done so without extraordinary effort.

47. The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction. Further, the Individual Defendants were privy to and had knowledge of the financial projections and the details surrounding the process leading up to the signing of the Merger Agreement. The Individual Defendants knew or were negligent in not knowing that the

material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to, separately, review the financial advisors' analyses in connection with their receipt of the fairness opinions, question the financial advisors as to their derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

48. The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy. The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and preparation and review of the Company's financial projections.

49. TerraForm is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

50. The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of his right to cast an informed vote on the Proposed Transaction if such misrepresentations and omissions are not corrected prior to the special meeting of TerraForm's shareholders. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

51. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

52. The Individual Defendants acted as controlling persons of TerraForm within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of the Company, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

53. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

54. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

55. In addition, as the Proxy sets forth at length, and as described herein, the

Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

56. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

57. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

58. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT III

**(Against the Individual Defendants for Breach of Their
Fiduciary Duty of Candor/Disclosure)**

59. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

60. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

61. By virtue of their role as directors and/or officers of the Company, the Individual Defendants directly owed Plaintiff a fiduciary duty of candor/disclosure, which required them to

disclose fully and fairly all material information within their control when they sought shareholder action, and to ensure that the Proxy did not omit any material information or contain any materially misleading statements.

62. As alleged herein, the Individual Defendants breached their duty of candor/disclosure by approving and/or causing the materially deficient Proxy to be disseminated to Plaintiff and the Company's other public stockholders.

63. The misrepresentations and omissions in the Proxy are material, and Plaintiff will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote. Where a shareholder has been denied one of the most critical rights he or she possesses—the right to a fully informed vote—the harm suffered is an individual and irreparable harm.

64. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the special meeting of TerraForm shareholders to vote on the Proposed Transaction or consummating the Proposed Transaction, until the Company discloses the material information discussed above which has been omitted from the Proxy;

B. Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

C. Awarding Plaintiff the costs and disbursements of this action, including reasonable

attorneys' and expert fees and expenses; and

      D.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: July 10, 2020               **MONTEVERDE & ASSOCIATES PC**

                                                          */s/ Juan E. Monteverde*
                                                       Juan E. Monteverde (JM-8169)
                                                       The Empire State Building
                                                     350 Fifth Avenue, Suite 4405
                                                     New York, NY 10118
                                                     Tel: (212) 971-1341
                                                     Fax: (212) 202-7880
                                                     Email: jmonteverde@monteverdelaw.com

                                                     *Attorneys for Plaintiff*